UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Wanda Lee Dutcher,

                          Plaintiff,

v.                                                    Case No. 3:13-CV-611 (GTS)

Comm'r of Soc. Sec.,

                          Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

COUGHLIN & GERHART, LLP                          SCOT G. MILLER, ESQ.
  Counsel for Plaintiff
P.O. Box 2039
Binghamton, NY 13902

U.S. SOCIAL SECURITY ADMIN.                      PETER W. JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by ("Plaintiff") against the

Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos.

16, 17.) For the reasons set forth below, Plaintiff's motion is granted, and Defendant's motion is

denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on August 30, 1974. She completed twelve years of high school, including some courses in cosmetology through BOCES, but is not licensed in that field. In the past, Plaintiff was most recently employed as a promotional media inserter at a newspaper printing company. In addition, Plaintiff has worked as a child care-giver and a waitress. Generally, her alleged disability consists of a low back injury, bilateral carpal tunnel syndrome, right knee pain, migraine headaches, anxiety and depression. Her alleged disability onset date is August 1, 2006.

### B. Procedural History

On February 23, 2007, Plaintiff applied for Supplemental Security Income and Social Security Disability Insurance benefits. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 2, 2009, Plaintiff appeared before the ALJ, Thomas P. Tielens. (T. 54-96.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on September 15, 2009. (T. 150-159.) On March 11, 2011, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings. (T. 160-165.)

On October 27, 2011, Plaintiff appeared before a different ALJ, Elizabeth W. Koennecke. (T. 97-147.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on December 13, 2011 (T. 16-46.) On April 5, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 22-38.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (T. 22.)  Second, the ALJ found that Plaintiff's residual symptoms from a lumbar fusion, carpal tunnel syndrome and personality disorder are severe impairments but that her migraine headaches, asthma, allergies, shin splints and right knee pain are not severe.  (T. 22-24.)  Third, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 24-26.)  The ALJ considered listings 1.02, 1.04, 11.00, 12.04, 12.06 and 12.08.  (*Id*.)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a wide range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) as follows: Plaintiff can occasionally lift, carry push or pull ten pounds; can frequently lift, carry, push or pull less than ten pounds; can stand or walk for up to two hours total in an eight-hour workday; has unlimited ability to sit; can manipulate frequently; can rarely perform bending; retains the ability (on a sustained basis) to frequently understand, remember and carry out simple instructions; can frequently respond appropriately to supervision, co-workers and usual work situations; and can frequently deal with changes in a routine work setting.  (T. 26-35.)  Fifth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T. 36-38.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ erred in failing to properly evaluate the opinion evidence.  (Dkt. No. 14 at 17-22 [Pl.'s Mem. of Law].)  Second, and finally, Plaintiff argues that the ALJ's decision is not supported by substantial evidence.  (*Id.* at 23-24.)

In response, Defendant argues that the ALJ properly evaluated the medical opinion evidence.  (Dkt. No. 15 at 5-10 [Def.'s Mem. of Law].)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past

work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    Whether the ALJ Erred in Failing to Properly Evaluate the Medical Opinion Evidence

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 14 at 17-24 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

Plaintiff argues that the ALJ erred in (1) failing to assign controlling weight to the opinions of her treating physician, Richard Zogby, M.D.; (2) failing to consider the proper weight to assign to the opinions of her treating social worker and nurse practitioner, Elizabeth Warneck, LCSW-R, and Deborah Radford, RN, MS, NPP; and (3) according great weight to the opinion of consultative examiner, Pranab Datta, M.D.

### 1.    Dr. Zogby

The ALJ accorded "little weight" to the opinion of Dr. Zogby that Plaintiff had severe functional limitations in all exertional categories[1] and that she would likely be absent from work more than three times per month.  (T. 31.)  The ALJ noted that, despite Dr. Zogby's expertise in orthopedics and his treatment relationship with Plaintiff, his opinions are not supported by the objective clinical and laboratory findings in the record, including his own limited positive

---

[1]     Specifically, Dr. Zogby opined in both March and June of 2008 that Plaintiff could sit, stand or walk for zero hours in an eight-hour workday.  (T. 924, 928.)

clinical findings, and are inconsistent with Plaintiff's activities of daily living. (*Id.*)

Under the "treating physician's rule," an ALJ must give controlling weight to the treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, No. 11-2907, 2012 WL 2096630, at *1 (2d Cir. June 12, 2012). The factors an ALJ should consider when determining the proper weight of a treating physician's opinion include the following: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(d); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Regulations require ALJs to set forth their reasons for the weight they assign to a treating physician's opinion. *Shaw*, 221 F.3d at 134.

Here, the ALJ acknowledged Dr. Zogby's area of specialty in orthopedics and his treatment relationship with Plaintiff but stated that his opinions regarding Plaintiff's functional limitations "are not supported by the objective clinical and laboratory findings in the medical evidence, including his own limited positive clinical findings on repeat physical examinations, as outlined above." (T. 31.) Earlier in her decision, the ALJ summarized Plaintiff's treatment history with Dr. Zogby, including her April 24, 2007 surgery as well as pre and post surgical scans and another surgery on September 2011 to implant a dorsal column stimulator. (T. 29-30.) The ALJ further summarized Dr. Zogby's treatment notes from April 2007 through July 2011 to show "some tenderness and decreased range of motion" and that only a few exams showed a

positive straight leg raising test on one or both sides.  (T. 30.)

The ALJ is correct that only one or two treatment noted reflected a positive straight leg raising test.  However, the ALJ failed to take note that almost every treatment note reflected Dr. Zogby's objective impression that Plaintiff was in mild to moderate pain, had difficulty moving from a seated to a standing position due to pain and that Plaintiff's range of motion was moderately reduced in all directions due to pain.  (T. 531, 539, 591, 598, 610, 614, 619, 620, 624, 658, 662, 666, 670, 676, 932.)  While "[t]he ALJ [i]s not required to mention or discuss every single piece of evidence in the record" so long as "the evidence of record permits the court to glean the rationale of an ALJ's decision," *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-9 (N.D.N.Y. 2005) (citations and quotations omitted), here, the ALJ concluded that Dr. Zogby's opinion of Plaintiff's functional limitations to sitting, standing and walking were not supported by his own treatment notes, when, in fact, his notes include evidence that would tend to support such opinions.  Therefore, the Commissioner's argument that Dr. Zogby's treatment notes did not include any mention of limitations in sitting is without basis.  (*See* Dkt. No. 15 at 7 [Def.'s Mem. of Law].)  For this reason alone, remand is warranted so that the ALJ may properly assess the opinions of Dr. Zogby and explain the weight she accorded those opinions.

### 2. Dr. Datta

In contrast, the ALJ gave great weight to the opinion of Dr. Datta, who, after examining Plaintiff on April 11, 2007, opined that Plaintiff had no more than mild limitation for prolonged sitting, standing, walking and climbing and that, while Plaintiff should avoid heavy lifting, bending and carrying, she otherwise had no limitation in her upper extremities for fine or gross motor activities.  (T. 29.)  The ALJ found that Dr. Datta's opinion is "supported by the record,

including later-dated medical evidence relating to [Plaintiff's] lumbar fusion surgery and follow-up treatment through the date of [the ALJ's] decision." (*Id.*)

Regarding Dr. Datta's opinion, it is important to note that the ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). Where, as here, the ALJ does not give controlling weight to a treating source opinion, the ALJ must evaluate each medical opinion based on factors such as the examining relationship, whether the opinion comes from a specialist, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. *See id.* Unless there is a treating source opinion, which is given controlling weight, an ALJ's failure to explain the weight given to the opinion of a State agency medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y.2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y.2006).

Here, the ALJ noted that Dr. Datta based his opinions on a one-time examination of Plaintiff, which occurred prior to her April 21, 2007 surgery. However, the ALJ failed to note that Dr. Datta is not an orthopedist but an internist. (T. 694.) Moreover, although the ALJ baldly states that Dr. Datta's opinion is supported by the record, including later-dated medical evidence regarding Plaintiff's April 21, 2007 surgery, she fails to specifically identify that evidence. in Support of his opinion, Dr. Datta relies on his examination findings, including that Plaintiff needed no assistance rising from a seated position and that she had full lateral flexion and full rotary movements bilaterally. These findings, based on a single examination, are in contrast to Dr. Zogby's findings, both prior to and after the April 21, 2007 surgery that Plaintiff

had a reduction in range of motion in all directions.  Moreover, Dr. Zogby repeatedly noted that Plaintiff had difficulty rising from a seated to a standing position.  Accordingly, because the ALJ failed to adequately explain why she assigned great weight to Dr. Datta's opinion, considering the contradictory findings of Plaintiff's treating specialist, remand is also necessary.

### 3.    Ms. Warneck and Ms. Radford

Regarding Ms. Warneck and Ms. Radford, the ALJ referred to their assessment that Plaintiff had either good or fair ability to perform functions related to her ability to adjust to employment and her ability to adjust personally and socially.  Specifically, in the area of adjustment to employment, Plaintiff was found to have good ability to follow work rules and maintain attention and concentration, but fair ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with stress and function independently.  (T. 34, 944.)  In the area of personal and social adjustment, Plaintiff was found to have good ability to maintain personal appearance, behave in an emotionally stable manner and demonstrate reliability, but had fair ability to relate predictably in social situations.  (*Id*.)  The ALJ noted that the assessment completed by Ms. Warneck and Ms. Radford equated good ability as the ability to function satisfactorily and fair ability as the ability to often function satisfactorily but will function unsatisfactorily 25-50% of the time.  (T. 944.)  The ALJ concluded that these limitations are "generally consistent with limitations in performing skilled or semi-skilled work activity" and that Plaintiff's "ability to frequently understand, remember and carry out simple instructions; respond appropriately to supervision, co-workers and usual work situations; and frequently deal with changes in a routine work setting are otherwise unimpaired."  (T. 34.) However, the ALJ ultimately concluded that the assessments of Ms. Warneck and Ms. Radford

could not be accorded controlling weight because they are not acceptable medical sources. (T. 35.)

To be sure, Licensed Clinical Social Workers and Nurse Practitioners are not "acceptable medical sources," for purposes of determining the existence of a medically determinable impairment. *See Wright v. Colvin*, No 12-CV-0440, 2013 WL 3777187, at *4 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R. § 416.913(a), (d)(1); SSR 06–03p, 2006 WL 2329939, at *2–3 (S.S.A.2006)). However, evidence from such other sources "may provide insight into . . . how [an impairment] affects the individual's ability to function." *Id.* Opinions from medical sources that are not considered acceptable medical sources, such as Licensed Clinical Social Workers and Nurse Practitioners, are "important and should be evaluated on key issues such as . . . functional effects [of an impairment]." *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009). The Regulations provide that the Secretary will consider, "evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. § 404.1513(e). In weighing the opinions of "other sources", the ALJ must use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. § 404.1527(c). *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010).

Here, the ALJ stated that she cannot accord the opinion of Ms. Warneck and Ms. Radford controlling weight because they are not acceptable medical sources, but she failed to properly explain the weight she did assign. Because the opinion of Ms. Warneck and Ms. Radford that Plaintiff has only a fair ability to interact with supervisors, co-workers and the public would tend not to support the ALJ's conclusion that Plaintiff's ability to respond appropriately to

supervision, co-workers and usual work situations in unimpaired, it was error for the ALJ to fail to properly weigh that opinion.

Therefore, for all of the foregoing reasons, remand is necessary so that the ALJ may render a decision regarding Plaintiff's RFC after properly evaluating all of the medical opinion evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **<u>REMANDED</u>** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: June 4, 2014
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge